IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JOUREY NEWELL and JAMES EVERETT SHELTON, individually and on behalf of a class of all persons and entities similarly situated, | : : : : : | Case No. 1:19-cv-1983 |
| Plaintiff, | : : | JURY DEMANDED |
| v. | : : | |
| GOHEALTH, LLC, | : : | |
| Defendant. | : | |

## CLASS ACTION COMPLAINT

**Preliminary Statement**

1. Plaintiffs Jourey Newell ("Mr. Newell") and James Everett Shelton ("Mr. Shelton") (collectively, "Plaintiffs") bring this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. "Month after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by" the Federal Communications Commission.[1]

3. The TCPA is designed to protect consumer privacy by prohibiting unsolicited, autodialed telemarketing calls to cellular telephones, unless the caller has the "prior express written consent" of the called party.

---

[1] *Omnibus TCPA Order*, GC Docket 02-278, FCC 15-72, 2015 WL 4387780, ¶ 1 (July 10, 2015).

4. Plaintiffs allege that Defendant Gohealth, LLC ("Gohealth" or "Defendant") made pre-recorded and automated telemarketing calls to their cellular telephones to promote health insurance products and services in violation of the TCPA.

5. Because the calls to Plaintiffs were transmitted using technology capable of generating thousands of similar calls per day, Plaintiffs bring this action on behalf of a proposed nationwide class of other persons who were sent the same illegal telemarketing call.

6. A class action is the best means of obtaining redress for the Defendant's illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

7. Plaintiff Jourey Newell is a resident of Pennsylvania.

8. Plaintiff James Everett Shelton is a resident of Pennsylvania, who currently attends college at Case Western Reserve University in Cleveland, Ohio.

9. Defendant Gohealth, LLC is a limited liability company registered to do business in Illinois with its principal place of business at 214 West Huron St., Chicago, Illinois 60654, which is in this district.

## Jurisdiction & Venue

10. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiffs' claims arise under federal law.

11. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in this district and maintains its principal place of business in this district.

**The Telephone Consumer Protection Act**

12. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

<u>The TCPA Prohibits Automated Telemarketing Calls</u>

13. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii).

14. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

15. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

16. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14115, ¶ 165 (2003).

17. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 FCC Rcd. 1830, 1844 (2012) (footnotes omitted).

<u>The Growing Problem of Automated Telemarketing</u>

18. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC chairman).

19. "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016), https://www.ftc.gov/system/files/documents/advocacy_documents/commentstaff-ftc-bureau-consumer-protection-federal-communications-commission-rulesregulations/160616robocallscomment.pdf.

20. In fiscal year 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016. Federal Trade Commission, *FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-nationaldo-not-call-registry-data-book-dnc.

4

21. *The New York Times* recently reported on the skyrocketing number of robocall complaints and widespread outrage about illegal telemarketing. Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-riseillegal.html; *see also* Katherine Bindley, *Why Are There So Many Robocalls? Here's What You Can Do About Them*, Wall St. J. (July 4, 2018), https://www.wsj.com/articles/why-there-are-so-manyrobocalls-heres-what-you-can-do-about-them-1530610203.

22. Even more recently, a technology provider combating robocalls warned that nearly half of all calls to cellphones next year will be fraudulent. Press Release, First Orion, Nearly 50% of U.S. Mobile Traffic Will Be Scam Calls by 2019 (Sept. 12, 2018), https://www.prnewswire.com/news-releases/nearly-50-of-us-mobile-traffic-will-be-scam-calls-by-2019-300711028.html

**Factual Allegations**

23. Gohealth markets and sells health insurance products and services to consumers.

24. Gohealth uses telemarketing to promote its products and services and solicit new customers.

25. Gohealth's telemarketing efforts include the use of automated dialing equipment and pre-recorded messages to send automated calls.

26. Gohealth engages in use of this equipment because it allows for thousands of automated calls to be placed at one time, but its sales representatives, who are paid based on the sales they complete, or on an hourly basis, only talk to individuals who respond. Therefore, Gohealth shifts the burden of wasted time onto consumers.

Call to Mr. Newell

27. Mr. Newell is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

28. On February 1, 2019, Mr. Newell received a pre-recorded telemarketing call on his cellular telephone number, (484) 213-XXXX.

29. When Mr. Newell picked up the phone, a pre-recorded message promoting health insurance was played.

30. To investigate the calling party, who was not fully identified in the pre-recorded message, Mr. Newell responded to the pre-recorded message.

31. When Mr. Newell was finally connected with a live representative, the representative informed Mr. Newell that the call was made on behalf of "Gohealth" and was for purposes of selling health insurance products and services.

32. Confirming that the call came from Gohealth, Mr. Newell received an e-mail from VBetancourt@gohealth.com on February 1, 2019.

33. Mr. Newell had no prior relationship with Gohealth and did not consent to be called by Gohealth.

Call to Mr. Shelton

34. Mr. Shelton is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

35. On March 13, 2019, Mr. Shelton received an automated telemarketing call to his cellular telephone number, (484) 626-XXXX.

36. Upon answering the call, Mr. Shelton heard a long pause. Mr. Shelton said hello several times with no response. He then heard a "bloop" noise distinctive of calls made using a type of automatic telephone dialing system ("ATDS") known as a predictive dialer. Then, Mr. Shelton was connected with a live representative, who proceeded to promote health insurance products and services and to transfer Mr. Shelton to speak with an insurance broker.

37. The insurance broker confirmed she "work[ed] for Gohealth" and continued to attempt to sell Mr. Shelton health insurance products and services.

38. The broker said her name was "Khadijia" and that her NPN number is 17998180.

39. Upon information and belief, Mr. Shelton was speaking with Ervin Khadijia Symone, licensed insurance producer out of Charlotte, North Carolina.

40. Ervin Khadijia Symone's insurance license states, "This licensee is authorized to transact on behalf of the following: GOHEALTH, LLC." *See* https://interactive.web.insurance.ca.gov/webuser/Licw_Indv_Det$.STARTUP?Z_INDV_ID=1874079&Z_IL_LIC_NBR=0L23799 (last visited Mar. 19, 2019).

41. Mr. Shelton had no prior relationship with Gohealth and did not consent to be called by Gohealth.

## Class Action Allegations

42. As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

43. The class of persons Plaintiffs propose to represent is tentatively defined as:

All persons within the United States to whom: (a) Gohealth, and/or a third party acting on its behalf, made one or more non-emergency telephone calls; (b) promoting health insurance products or services; (c) to their cellular telephone number; (d) using an automatic telephone dialing system or an artificial or prerecorded voice; and (e) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

44. Excluded from the class are the Defendant, and any entities in which the Defendant has a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

45. The class as defined above is identifiable through phone records and phone number databases that will be obtained through discovery.

46. The potential class members number at least in the thousands, since automated telemarketing campaigns make calls to hundreds or thousands of individuals a day. Individual joinder of these persons is impracticable.

47. Plaintiffs are members of the proposed class.

48. There are questions of law and fact common to Plaintiffs and to the proposed class, including but not limited to the following:

      a. Whether the Defendant violated the TCPA by using automated telemarketing to call cellular phones;

      b. Whether the Defendant placed calls using an ATDS;

      c. Whether the Defendant placed calls without obtaining the recipients' prior consent for the call; and

      d. Whether Plaintiffs and the class members are entitled to statutory damages because of the Defendant's actions.

49. Plaintiffs' claims are typical of the claims of class members. Plaintiffs' claims, like the claims of the class, arise out of the same common course of conduct by the Defendant and are based on the same legal and remedial theories.

50. Plaintiffs are adequate representatives of the class because their interests do not conflict with the interests of the class, they will fairly and adequately protect the interests of the class, and they are represented by counsel skilled and experienced in class actions, including TCPA class actions.

51. In fact, the Plaintiffs have foregone a simpler path to recovery by filing this matter as a putative class action, as opposed to an individual claim.

52. The actions of the Defendant are generally applicable to the class and to the Plaintiffs.

53. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or their agents.

54. The likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case, and given the small recoveries available through individual actions.

55. Plaintiffs are not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## Legal Claims

### Count One:
### Violation of the TCPA, 47 U.S.C. § 227(b)

56. Plaintiffs incorporate the allegations from all previous paragraphs as if fully set forth herein.

57. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiffs and members of the class using an ATDS and/or an artificial or prerecorded voice.

58. As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violation of the TCPA, 47 U.S.C. § 227, Plaintiffs and members of the class presumptively are entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

59. If the Defendant's conduct is found to be knowing or willful, the Plaintiffs and members of the class are entitled to an award of up to treble damages.

60. Plaintiffs and members of the class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

### Relief Sought

For themselves and all class members, Plaintiffs request the following relief:

    A.       Certification of the proposed class;

    B.       Appointment of the Plaintiffs as representatives of the class;

    C.       Appointment of the undersigned counsel as counsel for the class;

    D.       A declaration that Defendant and/or its affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA;

    E.       An order enjoining Defendant and/or its affiliates, agents, and/or other related entities, as provided by law, from engaging in the unlawful conduct set forth herein;

    F.       An award to Plaintiffs and the class of damages, as allowed by law;

    G.       Leave to amend this Complaint to conform to the evidence presented at trial; and

    H.       Orders granting such other and further relief as the Court deems necessary, just, and proper.

**Plaintiffs request a jury trial as to all claims of the complaint so triable.**

PLAINTIFFS,
By their attorneys,

**/s/ Brian K. Murphy**
Brian K. Murphy (6225697)
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH 43215
(614) 488-0400
(614) 488-0401 facsimile
murphy@mmmb.com

Lauren E. Urban (6293832)
2425 N. Spaulding Ave., Floor 2
Chicago, IL 60647
(419) 344-1146
lauren.elizabeth.urban@gmail.com

                                        Anthony I. Paronich
                                        Paronich Law, P.C.
                                        350 Lincoln Street, Suite 2400
                                        Hingham, MA 02043
                                        (508) 221-1510
                                        anthony@paronichlaw.com